LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California  91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

*Attorneys for Plaintiff L.D.*

THE SEHAT LAW FIRM, PLC
Cameron Sehat, Esq. (SBN 256535)
18881 Von Karman Ave., Suite 850
Irvine, CA 92612
Telephone: (949) 825-5200
Facsimile: (949) 313-5001
Cameron@sehatlaw.com

*Attorneys for Plaintiff Juan Frias*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

L.D., a minor, by and through her guardian *ad litem* Desiree DeLeon, individually and as successor-in-interest to Cesar Frias, deceased; JUAN FRIAS, individually,

            Plaintiffs,

    vs.

CITY OF LOS ANGELES; ENRIQUE ANZALDO; LEON MAYA; WILLIAM HEARD; RUBEN LOPEZ; JUAN GARCIA; VALENTIN MARTINEZ; SYNTHIA LEE; BRUCE ADAM; GUY DOBINE; JOE DOMINGUEZ; JAMES HART; JOSEPH GOOSBY; TIM MCCARTHY; DAIN HURST and DOES 1-10, inclusive,

            Defendants.

Case No. 2:16-cv-04626-PSG-SK

**CONSOLIDATED COMPLAINT FOR DAMAGES**
1. Fourth Amendment—Detention and Arrest (42 U.S.C. § 1983)
2. Fourth Amendment—Excessive Force (42 U.S.C. § 1983)
3. Fourth Amendment—Denial of Medical Care (42 U.S.C. § 1983)
4. Substantive Due Process (42 U.S.C. § 1983)
5. Municipal Liability—Ratification (42 U.S.C. § 1983)
6. Municipal Liability—Inadequate Training (42 U.S.C. § 1983)
7. Municipal Liability—Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)
8. Supervisory Liability (42 U.S.C. § 1983)
9. False Arrest/False Imprisonment
10. Battery (Wrongful Death)
11. Negligence (Wrongful Death)
12. Violation of Cal. Civil Code § 52.1

**DEMAND FOR JURY TRIAL**

## CONSOLIDATED COMPLAINT FOR DAMAGES

COME NOW, Plaintiffs L.D., a minor, by and through her guardian *ad litem* Desiree DeLeon, individually and as successor-in-interest to Cesar Frias, deceased; and JUAN FRIAS, individually, for their Complaint against Defendants City of Los Angeles; Enrique Anzaldo; Leon Maya; William Heard; Ruben Lopez; Juan Garcia; Valentin Martinez; Synthia Lee; Bruce Adam; Guy Dobine; Joe Dominguez; James Hart; Joseph Goosby; Tim McCarthy; and Dain Hurst and hereby allege as follows:

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.  This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## INTRODUCTION

3.      This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the fatal officer-involved shooting of Plaintiffs' father and son, Cesar Frias ("DECEDENT"), on April 5 and 6, 2016.

**PARTIES**

4.     At all relevant times, DECEDENT Cesar Frias was an individual residing in the City of Los Angeles, California.

5.     Plaintiff L.D. is a minor individual residing in the City of Los Angeles, California and is the natural daughter of DECEDENT.  L.D. sues both in her individual capacity as the daughter of DECEDENT and in a representative capacity as a successor-in-interest to DECEDENT pursuant to California Code of Civil Procedure § 377.60.  L.D. seeks both survival and wrongful death damages under federal and state law.

6.     Plaintiff JUAN FRIAS ("FRIAS") is an individual residing in the City of Los Angeles, California and is the natural father of DECEDENT.  FRIAS sues in his individual capacity as the father of DECEDENT. FRIAS seeks survival and wrongful death damages under federal law.

7.     At all relevant times, Defendant CITY OF LOS ANGELES ("CITY") is and was a municipal corporation existing under the laws of the State of California. CITY is a chartered subdivision of the State of California with the capacity to be sued.  CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Los Angeles Police Department ("LAPD"), and its Metropolitan Division, Special Weapons and Tactics ("SWAT"), and its agents and employees.  At all relevant times, Defendant CITY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the LAPD and its employees and agents complied with the laws of the United States and of the State of California.  At all relevant times, CITY was the employer of Defendants ENRIQUE ANZALDO ("ANZALDO"); LEON MAYA ("MAYA"); WILLIAM HEARD ("HEARD"); RUBEN LOPEZ ("LOPEZ") JUAN GARCIA ("GARCIA"); VALENTIN MARTINEZ ("MARTINEZ"); SYNTHIA LEE ("LEE"); BRUCE ADAM ("ADAM"); GUY DOBINE ("DOBINE"); JOE DOMINGUEZ ("DOMINGUEZ"); JAMES HART

1  ("HART"); JOSEPH GOOSBY ("GOOSBY"); TIM MCCARTHY

2  ("MCCARTHY"); and DAIN HURST ("HURST") (hereinafter collectively referred

3  to as "the individual defendants").

4       8.    ANZALDO is an officer working for the CITY, through his

5  employment with the LAPD and its SWAT team.  At all relevant times, ANZALDO

6  was acting under color of law within the course and scope of his duties as an officer

7  for the LAPD and its SWAT team.  Also at all relevant times, ANZALDO was

8  acting with the complete authority and ratification of his principal, Defendant CITY.

9       9.    HART is an officer working for the CITY, through his employment

10  with the LAPD and its SWAT team.  At all relevant times, HART was acting under

11  color of law within the course and scope of his duties as an officer for the LAPD

12  and its SWAT team.  Also at all relevant times, HART was acting with the complete

13  authority and ratification of his principal, Defendant CITY.

14      10.    GOOSBY is an officer working for the CITY, through his employment

15  with the LAPD and its SWAT team.  At all relevant times, GOOSBY was acting

16  under color of law within the course and scope of his duties as an officer for the

17  LAPD and its SWAT team.  Also at all relevant times, GOOSBY was acting with

18  the complete authority and ratification of his principal, Defendant CITY.

19      11.    LOPEZ is an officer working for the CITY, through his employment

20  with the LAPD and its SWAT team.  At all relevant times, LOPEZ was acting under

21  color of law within the course and scope of his duties as an officer for the LAPD

22  and its SWAT team.  Also at all relevant times, LOPEZ was acting with the

23  complete authority and ratification of his principal, Defendant CITY.

24      12.    DOBINE is an officer working for the CITY, through his employment

25  with the LAPD and its SWAT team.  At all relevant times, DOBINE was acting

26  under color of law within the course and scope of his duties as an officer for the

27  LAPD and its SWAT team.  Also at all relevant times, DOBINE was acting with the

28  complete authority and ratification of his principal, Defendant CITY.

1    13.    ADAM is an officer working for the CITY, through his employment
2  with the LAPD and its SWAT team.  At all relevant times, ADAM was acting under
3  color of law within the course and scope of his duties as an officer for the LAPD
4  and its SWAT team.  Also at all relevant times, ADAM was acting with the
5  complete authority and ratification of his principal, Defendant CITY.

6    14.    MAYA is an officer working for the CITY, through his employment
7  with the LAPD and its SWAT team.  At all relevant times, MAYA was acting under
8  color of law within the course and scope of his duties as an officer for the LAPD
9  and its SWAT team.  Also at all relevant times, MAYA was acting with the
10  complete authority and ratification of his principal, Defendant CITY.

11    15.    MCCARTHY is an officer working for the CITY, through his
12  employment with the LAPD and its SWAT team.  At all relevant times,
13  MCCARTHY was acting under color of law within the course and scope of his
14  duties as an officer for the LAPD and its SWAT team.  Also at all relevant times,
15  MCCARTHY was acting with the complete authority and ratification of his
16  principal, Defendant CITY.

17    16.    DOMINGUEZ is an officer working for the CITY, through his
18  employment with the LAPD and its SWAT team.  At all relevant times,
19  DOMINGUEZ was acting under color of law within the course and scope of his
20  duties as an officer for the LAPD and its SWAT team.  Also at all relevant times,
21  DOMINGUEZ was acting with the complete authority and ratification of his
22  principal, Defendant CITY.

23    17.    GARCIA is an officer working for the CITY, through his employment
24  with the LAPD.  At all relevant times, GARCIA was acting under color of law
25  within the course and scope of his duties as an officer for the LAPD.  Also at all
26  relevant times, GARCIA was acting with the complete authority and ratification of
27  his principal, Defendant CITY.

28

CONSOLIDATED COMPLAINT FOR DAMAGES

18.     HURST is a supervisory officer working for the CITY, through his employment with the LAPD and its SWAT team.  At all relevant times, HURST was acting under color of law within the course and scope of his duties as an officer for the LAPD and its SWAT team.  Also at all relevant times, HURST was acting with the complete authority and ratification of his principal, Defendant CITY.

19.     LEE is a supervisory officer and captain working for the CITY, through her employment with the LAPD.  At all relevant times, LEE was acting under color of law within the course and scope of her duties as an officer, captain, and/or incident commander for the LAPD.  Also at all relevant times, LEE was acting with the complete authority and ratification of her principal, Defendant CITY.  At all relevant times, LEE had supervisory authority.

20.     HEARD is a supervisory officer and captain working for the CITY, through his employment with the LAPD.  At all relevant times, HEARD was acting under color of law within the course and scope of his duties as an officer, captain, and/or incident commander for the LAPD.  Also at all relevant times, HEARD was acting with the complete authority and ratification of his principal, Defendant CITY. At all relevant times, HEARD had supervisory authority.

21.     LOPEZ is a supervisory officer and lieutenant working for the CITY, through his employment with the LAPD.  At all relevant times, LOPEZ was acting under color of law within the course and scope of his duties as an officer, captain, and/or incident commander for the LAPD.  Also at all relevant times, LOPEZ was acting with the complete authority and ratification of his principal, Defendant CITY. At all relevant times, LOPEZ had supervisory authority.

22.     On information and belief, the foregoing individual defendants were residents of the City of Los Angeles.

23.     In doing the acts and failing and omitting to act as hereinafter described, Defendants ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, and MCCARTHY were acting on the

implied and actual permission and consent of the supervisory officers LOPEZ, HEARD, LEE, and HURST.

24.     In doing the acts and failing and omitting to act as hereinafter described, the individual defendants were acting on the implied and actual permission and consent of the CITY.

25.     At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

26.     All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity.  Moreover, Defendants and their agents ratified all of the acts complained of herein.

27.     The individual defendants are sued in their individual capacity.

28.     On or about July 25, 2016, Plaintiff L.D. filed a comprehensive and timely claim for damages with the City of Los Angeles pursuant to applicable sections of the California Government Code.  On August 11, 2016, the City denied said claim. L.D. initially filed her lawsuit on February 1, 2017.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

29.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 28 of this Complaint with the same force and effect as if fully set forth herein.

30.     On April 5, 2016, officers working for the CITY responded to DECEDENT's residence, located in the 14700 block of Lakeside Street in Sylmar, California.  The first group of officers arrived at approximately 7:50 p.m. on that date.  The officers were responding to a call regarding a man (DECEDENT) with a

mental illness wherein DECEDENT's family members had advised Dispatch that the family needed help taking DECEDENT to the hospital.

31.     At approximately 9:25 p.m., Defendant HEARD, who is a supervisory officer working for the CITY and the LAPD, established a plan to attempt entry into DECEDENT's bedroom notwithstanding that DECEDENT posed no immediate threat of death or serious bodily injury to any person.  At this time, officers working for the CITY had already commanded DECEDENT's family members to exit the residence.

32.     At approximately 10:00 p.m., Defendant GARCIA discharged approximately six beanbag rounds from his beanbag shotgun at DECEDENT through a hole the officers created in DECEDENT's bedroom door, striking DECEDENT and thereby using excessive force against him.

33.     Also at approximately 10:00 p.m., Defendant MARTINEZ discharged approximately four beanbag rounds from his beanbag shotgun at DECEDENT, striking DECEDENT and thereby using excessive force against him.

34.     At approximately 12:15 a.m., Officer Gastelo, a CNT negotiator, was directed to cease negotiation efforts.  The cessation of negotiation efforts in this situation was a contributing factor in the sustained unreasonable detention, and a cause in the use of excessive force against DECEDENT.

35.     At approximately 1:29 a.m. on April 6, 2016, Defendant LEE directed Defendant ADAM to deploy tear gas into DECEDENT's bedroom and otherwise approved and condoned the use of tear gas.  Defendant ADAM deployed tear gas into DECEDENT's bedroom.  As a result of the tear gas being deployed into DECEDENT's bedroom, DECEDENT exited the bedroom through the bedroom window.  The use of tear gas in this situation was a use of excessive and unreasonable force.

36. At approximately 1:51 a.m., Defendant DOBINE fired approximately six beanbag rounds at DECEDENT from his beanbag shotgun, striking DECEDENT and thereby using excessive force against him.

37. Also at approximately 1:51 a.m., Defendant DOMINGUEZ fired approximately three sponge rounds from a 40MM weapon at DECEDENT and also discharged his TASER at DECEDENT for at least one 13-second cycle and an additional 7-second cycle, thereby using excessive force against him.

38. Also at approximately 1:51 a.m., Defendant HART fired approximately three beanbag rounds at DECEDENT from his beanbag shotgun, striking DECEDENT and thereby using excessive force against him.

39. At approximately 1:52 a.m., ANZALDO shot DECEDENT without warning, thereby further using excessive force against him. DECEDENT did not pose an immediate threat of death or serious bodily injury to anyone at the time of the shooting.

40. After being shot, DECEDENT was bleeding profusely and in obvious and critical need of emergency medical care and treatment. Defendants did not timely permit medical personnel to treat DECEDENT. Rather, Defendant MCCARTHY kicked DECEDENT approximately two times after he had already been shot and was in obvious need of critical medical attention, thereby aggravating his injuries and using excessive force against him.

41. Also after DECEDENT had been shot, Defendant MAYA discharged his TASER at DECEDENT for approximately twelve cycles, notwithstanding that DECEDENT was bleeding profusely and in obvious and critical need of emergency medical care and treatment. Defendant MAYA thus aggravated DECEDENT's injuries and used excessive and unreasonable force against him.

42. Also after DECEDENT had been shot, Defendant GOOSBY applied his TASER to DECEDENT approximately twice, thereby aggravating his injuries and using excessive force against him.

43.     Also after DECEDENT had been shot, officers working for the CITY handcuffed DECEDENT and Defendant ADAM applied a hobble restraint device to DECEDENT.

44.     The delay of medical care to DECEDENT caused DECEDENT extreme physical and emotional pain and suffering, and was a contributing cause of DECEDENT's serious injuries.

45.     The use of force against DECEDENT by the foregoing individual defendants was excessive and objectively unreasonable under the circumstances, especially because DECEDENT was mentally ill and did not pose an immediate threat of death or serious bodily injury to anyone at the time of the shooting.

46.     Plaintiff L.D. would have been dependent on DECEDENT, her father, to some extent, for the necessities of life.

47.     Plaintiff L.D. is DECEDENT's successor-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and succeeds to DECEDENT's interest in this action as the natural daughter of DECEDENT.

## FIRST CLAIM FOR RELIEF

**Fourth Amendment—Detention and Arrest (42 U.S.C. § 1983)**

(By Plaintiff L.D. against Defendants ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, LOPEZ, HEARD, LEE, and HURST)

48.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 47 of this Complaint with the same force and effect as if fully set forth herein.

49.     Defendants detained DECEDENT without reasonable suspicion and arrested him without probable cause.

50.     When Defendants ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, and GOOSBY pointed their weapons at

DECEDENT, deployed gas against him, and used force against him, including but not limited to at the direction of Defendants LOPEZ, HEARD, LEE, and HURST, they violated DECEDENT's right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

51.     Defendants' conduct was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to Defendants ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, LOPEZ, LEE, and HURST.

52.     As a result of their misconduct, Defendants ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, LOPEZ, LEE, and HURST are liable for DECEDENT's injuries, either because they were integral participants in the wrongful detention and arrest, or because they failed to intervene to prevent these violations.

53.     Plaintiff L.D. brings this claim as a successor-in-interest to the DECEDENT, and seeks both survival and wrongful death damages for the violation of DECEDENT's rights.  Plaintiff L.D. also seeks attorney's fees and costs under this claim.

## SECOND CLAIM FOR RELIEF

### Fourth Amendment —Excessive Force (42 U.S.C. § 1983)

(By Plaintiff L.D. against Defendants ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, LOPEZ, LEE, and HURST)

54.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 53 of this Complaint with the same force and effect as if fully set forth herein.

55.    Defendants deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

56.    On information and belief, Defendants LOPEZ, HEARD, LEE, and HURST were supervisory officers with respect to this INCIDENT with decision-making authority. Also on information and belief, LOPEZ, HEARD, LEE, and HURST directed, authorized, and/or supervised Defendants ANZALDO'S, MAYA'S, GARCIA'S, MARTINEZ', ADAM'S, DOBINE'S, DOMINGUEZ', HART'S, and GOOSBY'S use deadly and non-deadly force against DECEDENT within the course of this INCIDENT.

57.    Defendants MAYA, GARCIA, MARTINEZ, DOBINE, DOMINGUEZ, HART, and GOOSBY used excessive force against DECEDENT when they deployed beanbag rounds at him with beanbag shotguns, 40MM sponge rounds, and discharged TASERs at DECEDENT, including simultaneously, and also including after DECEDENT had already been shot with a lethal weapon.

58.    Defendants LEE and ADAM used excessive force against DECEDENT when they formulated and executed the tactical plan to deploy tear gas into DECEDENT's bedroom.  ADAM further used excessive force when he applied a hobble restraint device to DECEDENT after he had been shot with a lethal weapon.

59.    MCCARTHY used excessive force against DECEDENT when he kicked DECEDENT after DECEDENT had already been shot with a lethal weapon.

60.    Defendant ANZALDO used excessive force against DECEDENT when he shot him without warning. ANZALDO's gunshot caused DECEDENT's death.

61.    As a result of the foregoing, DECEDENT suffered great physical pain and emotional distress up to the time of his death, loss of enjoyment of life, loss of life, and loss of earning capacity.

62.    The conduct of the individual defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT, and therefore warrants the imposition of exemplary and punitive damages as to the individual defendants.

63.    The use of force was excessive and unreasonable, especially because DECEDENT was mentally ill (a fact known by the involved officers at the time of the incident) and posed no immediate threat of death or serious bodily injury at the time of the shooting and other uses of force.  Further, Defendants' use of force violated their training and standard police officer training.

64.    As a result of their misconduct, Defendants ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY,  LOPEZ, HEARD, LEE, and HURST are liable for DECEDENT's injuries, either because they were integral participants in the use of force, or because they failed to intervene to prevent these violations.

65.    Plaintiff L.D. brings this claim as a successor-in-interest to the DECEDENT, and seeks both survival and wrongful death damages for the violation of DECEDENT's rights.  Plaintiff L.D. also seeks attorney's fees and costs under this claim.

**THIRD CLAIM FOR RELIEF**

**Fourth Amendment —Denial of Medical Care (42 U.S.C. § 1983)**

(By Plaintiff L.D. against Defendants ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, LOPEZ, HEARD, LEE, and HURST)

66.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 65 of this Complaint with the same force and effect as if fully set forth herein.

67.     After being shot, DECEDENT was bleeding profusely and in obvious and critical need of emergency medical care and treatment.  Defendants did not timely permit medical personnel to treat DECEDENT.  Rather, Defendant MCCARTHY kicked DECEDENT approximately two times after DECEDENT had already been shot and was in obvious need of critical medical attention, thereby aggravating his injuries and using excessive force against him.

68.     Also after DECEDENT had been shot, Defendant MAYA discharged his TASER at DECEDENT for approximately twelve cycles, notwithstanding that DECEDENT was bleeding profusely and in obvious and critical need of emergency medical care and treatment.  Defendant MAYA thus aggravated DECEDENT's injuries and used excessive and unreasonable force against him.

69.     Also after DECEDENT had been shot, Defendant GOOSBY applied his TASER to DECEDENT approximately twice, thereby aggravating his injuries and using excessive force against him.

70.     Also after DECEDENT had been shot, officers working for the CITY handcuffed DECEDENT and Defendant ADAM applied a hobble restraint device to DECEDENT.

71.      The denial of medical care by Defendants deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as

guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

72.     As a result of the foregoing, DECEDENT suffered great physical pain and emotional distress up to the time of his death, loss of enjoyment of life, loss of life, and loss of earning capacity.

73.     Defendants knew that failure to provide timely medical treatment to DECEDENT could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing DECEDENT great bodily harm and death.

74.     Defendants' conduct was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to the individual defendants.

75.     As a result of their misconduct, Defendants ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, LOPEZ, HEARD, LEE, and HURST are liable for DECEDENT's injuries, either because they were integral participants in the denial of medical care, or because they failed to intervene to prevent these violations.

76.     Plaintiff L.D. brings this claim as a successor-in-interest to the DECEDENT, and seeks both survival and wrongful death damages for the violation of DECEDENT's rights.  Plaintiff L.D. also seeks attorney's fees and cost under this claim.

**FOURTH CLAIM FOR RELIEF**

**Substantive Due Process (42 U.S.C. § 1983)**

(By all Plaintiffs against Defendants ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, LOPEZ, HEARD, LEE, and HURST)

77.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 76 of this Complaint with the same force and effect as if fully set forth herein.

78.     Plaintiff L.D. had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiff's familial relationship with her father, DECEDENT.

79.     Plaintiff FRIAS had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in FRIAS' familial relationship with his son, DECEDENT.

80.     The aforementioned actions of Defendants ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, LOPEZ, HEARD, LEE, and HURST, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of DECEDENT and Plaintiffs, and with purpose to harm unrelated to any legitimate law enforcement objective.

81.     As a direct and proximate result of these actions, DECEDENT experienced pain and suffering and eventually died.  Defendants thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationship with DECEDENT.

82.     As a direct and proximate cause of the acts of Defendants, Plaintiffs suffered emotional distress, mental anguish, and pain.  Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

83.     As a result of their misconduct, Defendants ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, LOPEZ, HEARD, LEE, and HURST are liable for DECEDENT's injuries, either because they were integral participants in the wrongful detention and arrest, use of excessive force, and denial of medical care or because they failed to intervene to prevent these violations.

84.     Defendants' conduct was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to the individual Defendants.

85.     Plaintiff L.D. brings this claim individually and seeks wrongful death damages under this claim.  Plaintiff FRIAS brings this claim individually and seeks wrongful death damages.  Plaintiffs also seek attorneys' fees and costs under this claim.

## FIFTH CLAIM FOR RELIEF

### Municipal Liability – Ratification (42 U.S.C. § 1983)

(By Plaintiffs FRIAS and L.D. against Defendant CITY)

86.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 85 of this Complaint with the same force and effect as if fully set forth herein.

87.     Defendants ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, LOPEZ, HEARD, LEE, and HURST acted under color of law.

88.     The acts of the individual defendants deprived DECEDENT and Plaintiffs of their particular rights under the United States Constitution.

89.     Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of the individual defendants, ratified the acts of the defendants' acts and the bases for them. Upon information and belief, the final policymaker knew of and specifically approved of the individual defendants' acts.

90.     Upon information and belief, a final policymaker has determined (or will determine) that the acts of the individual defendants were "within policy."

91.     By reason of the aforementioned acts and omissions, Plaintiff L.D. suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and support of DECEDENT.  The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

92.     Accordingly, Defendant CITY is liable to Plaintiffs FRIAS and L.D. for compensatory damages under 42 U.S.C. § 1983.

93.     Plaintiff L.D. brings this claim as a successor-in-interest to DECEDENT, and seeks both survival and wrongful death damages under this claim. Plaintiff L.D. also seeks punitive damages, costs, and attorney's fees under this claim.

94.     Plaintiff FRIAS brings this claim individually and seeks survival and wrongful death damages under this claim. Plaintiffs also seek attorneys' fees under this claim.

//

CONSOLIDATED COMPLAINT FOR DAMAGES

## SIXTH CLAIM FOR RELIEF

### Municipal Liability – Failure to Train (42 U.S.C. § 1983)

(By Plaintiffs FRIAS and L.D. against Defendant CITY)

95.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 94 of this Complaint with the same force and effect as if fully set forth herein.

96.     Defendants ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, LOPEZ, HEARD, LEE, and HURST acted under color of law.

97.     The acts of the individual defendants deprived DECEDENT and Plaintiffs of their particular rights under the United States Constitution.

98.     The training policies of Defendant CITY were not adequate to train its officers to handle the usual and recurring situations with which they must deal.  This includes training with respect to tactics, handling situations with the mentally ill, and the use of force, including deadly force and less lethal force.

99.     Defendant CITY was deliberately indifferent to the obvious consequences of its failure to train its officers adequately, including training with respect to tactics, handling situations with the mentally ill, and the use of force, including deadly and non-deadly force.

100.    The failure of Defendant CITY to provide adequate training caused the deprivation of Plaintiffs' rights by the individual defendants; that is, Defendants' failure to train is so closely related to the deprivation of the Plaintiffs' rights as to be the moving force that caused the ultimate injury.

101.    On information and belief, CITY failed to train the individual defendants properly and adequately, including training with respect to tactics, handling situations with the mentally ill, and the use of force, including deadly and non-deadly force.

102.   By reason of the aforementioned acts and omissions, Plaintiff L.D. has suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and support of DECEDENT.  The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

103.   The following are only a few examples of continued misconduct by officers working for Defendant CITY.  These examples demonstrate a failure to train with regard to handling situations with mentally ill individuals and unarmed individuals:

a) In *Contreras v. City of Los Angeles*, case number 2:11-cv-01480-SVW (SHx), the CITY argued that the use deadly force against Mr. Contreras by LAPD officers was reasonable; a unanimous jury disagreed, awarding Mr. Contreras $5,700,000 after finding that the involved officers used excessive and unreasonable force when they shot an unarmed Mr. Contreras.  Police reports confirmed that Mr. Contreras was unarmed.  In that case, the involved officers were not disciplined or retrained for their use of deadly force, and the CITY found that the shooting was justified and did not violate any CITY policy.

b) In *P.C., et al. v. City of Los Angeles*, case number CV 07-3413 PLA, the CITY argued that the involved LAPD officers' use of force was reasonable; a unanimous jury disagreed, awarding the plaintiffs a total of $3,215,000 after finding that the involved officers' use of force was excessive and unreasonable.  In that case, the involved officers were not disciplined or retrained for their use of deadly force, and the CITY found that the shooting was justified and did not violate any CITY policy.

c) In *Cano, et al. v. City of Los Angeles*, case number 2:15-cv-00333-JAK-E, the family of an unarmed man (David Martinez) who was shot and killed by LAPD Rampart officers alleged that the force used by the

1    officers was excessive and unreasonable.  Police reports confirmed that

2    Mr. Martinez was unarmed at the time of the shooting. In that case, the

3    involved officers were not disciplined or retrained for their use of

4    deadly force, and the CITY found that the shooting was justified and

5    did not violate any CITY policy.

6    d)  In *Wysocki v. City of Los Angeles*, case number

7    2:15−cv−09587−PA−GJS, currently pending in the United States

8    District Court for the Central District of California, the mother of a

9    mentally ill veteran (Michael Mears) who was killed by LAPD officers

10    after the officers used Tasers, pepper spray, and police batons against

11    him at his own residence alleges that the force used by the officers was

12    excessive and unreasonable.  Police reports confirm that Mr. Mears was

13    unarmed during the incident. In that case, the involved officers were

14    not disciplined or retrained for their use of deadly force, and the CITY

15    found that the shooting was justified and did not violate any CITY

16    policy.

17    104.    Accordingly, Defendant CITY is liable to Plaintiffs FRIAS and L.D.

18  for compensatory damages under 42 U.S.C. § 1983.

19    105.    Plaintiff L.D. brings this claim as a successor-in-interest to

20  DECEDENT, and seeks both survival and wrongful death damages under this claim.

21  Plaintiff L.D. also seeks punitive damages, costs, and attorney fees under this claim.

22    106.    Plaintiff FRIAS brings this claim individually and seeks survival and

23  wrongful death damages under this claim. Plaintiffs also seek attorneys' fees under

24  this claim.

25

26  //

27

28

## SEVENTH CLAIM FOR RELIEF

### Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)

(By Plaintiffs FRIAS and L.D. against Defendant CITY)

107.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 106 of this Complaint with the same force and effect as if fully set forth herein.

108.   The individual defendants, including ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, LOPEZ, HEARD, LEE, and HURST acted under color of law.

109.   The individual defendants acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant CITY.

110.   On information and belief, the individual defendants were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the incident involving DECEDENT, including the use of deadly and non-deadly force against DECEDENT, the wrongful detention and arrest of DECEDENT, and the denial of medical care to DECEDENT.

111.    Defendant CITY, together with other CITY policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

(a)    Using excessive force, including excessive deadly and non-deadly force;

(b)    Providing inadequate training regarding the use of deadly and non-deadly force;

(c)    Employing and retaining as police officers individuals such as Defendants ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, and MCCARTHY, LOPEZ, HEARD, LEE, and HURST, whom Defendant CITY at all times material herein knew or reasonably

should have known had dangerous propensities for abusing their authority and for using excessive force;

(d)   Inadequately supervising, training, controlling, assigning, and disciplining CITY officers, and other personnel, including Defendants ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, LOPEZ, HEARD, LEE, and HURST, whom Defendant CITY knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

(e)   Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by CITY officers, including Defendants ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, LOPEZ, HEARD, LEE, and HURST;

(f)   Failing to adequately discipline CITY police officers, including Defendants ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, LOPEZ, HEARD, LEE, and HURST for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

(g)   Announcing that unjustified shootings are "within policy," including shootings that were later determined in court to be unconstitutional;

CONSOLIDATED COMPLAINT FOR DAMAGES

(h) Even where shootings are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the officers involved;

(i) Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which police officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing;

(j) Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police shootings, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in shootings of unarmed people;

(k) Providing inadequate training regarding handling situations with mentally ill individuals.

112. By reason of the aforementioned acts and omissions, Plaintiff L.D. has suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

113. Defendant CITY, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate

indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of DECEDENT, Plaintiffs, and other individuals similarly situated.

114.   By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, the CITY and other final policy makers acted with intentional, reckless, and callous disregard for the life of DECEDENT and for DECEDENT's and Plaintiff's constitutional rights.  Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendant CITY were affirmatively linked to and were a significantly influential force behind the injuries of DECEDENT and Plaintiffs.

115.   The following are only a few examples of continued misconduct by officers working for Defendant CITY.  These examples demonstrate an unconstitutional custom, policy, and practice of using deadly and non-deadly force against unarmed civilians, and ratifying that use of deadly force and/or finding the use of deadly force to be justified or "within policy":

a) In *Contreras v. City of Los Angeles*, case number 2:11-cv-01480-SVW (SHx), the CITY argued that the use deadly force against Mr. Contreras by LAPD officers was reasonable; a unanimous jury disagreed, awarding Mr. Contreras $5,700,000 after finding that the involved officers used excessive and unreasonable force when they shot an unarmed Mr. Contreras.  Police reports confirmed that Mr. Contreras was unarmed.  In that case, the involved officers were not disciplined or retrained for their use of deadly force, and the CITY found that the shooting was justified and did not violate any CITY policy.

b) In *P.C., et al. v. City of Los Angeles*, case number CV 07-3413 PLA, the CITY argued that the involved LAPD officers' use of force was reasonable; a unanimous jury disagreed, awarding the plaintiffs a total of $3,215,000 after finding that the involved officers' use of force was

excessive and unreasonable.  In that case, the involved officers were not disciplined or retrained for their use of deadly force, and the CITY found that the shooting was justified and did not violate any CITY policy.

c) In *Cano, et al. v. City of Los Angeles*, case number 2:15-cv-00333-JAK-E, the family of an unarmed man (David Martinez) who was shot and killed by LAPD Rampart officers alleged that the force used by the officers was excessive and unreasonable.  Police reports confirmed that Mr. Martinez was unarmed at the time of the shooting. In that case, the involved officers were not disciplined or retrained for their use of deadly force, and the CITY found that the shooting was justified and did not violate any CITY policy.

d) In *Wysocki v. City of Los Angeles*, case number 2:15−cv−09587−PA−GJS, currently pending in the United States District Court for the Central District of California, the mother of a mentally ill veteran (Michael Mears) who was killed by LAPD officers after the officers used Tasers, pepper spray, and police batons against him at his own residence alleges that the force used by the officers was excessive and unreasonable.  Police reports confirm that Mr. Mears was unarmed during the incident. In that case, the involved officers were not disciplined or retrained for their use of deadly force, and the CITY found that the shooting was justified and did not violate any CITY policy.

116.  Accordingly, Defendant CITY is liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

117.  Plaintiff L.D. brings this claim individually and as a successor-in-interest to DECEDENT, and seeks both survival and wrongful death damages under

this claim.  Plaintiff L.D. also seeks punitive damages, costs, and attorneys' fees under this claim.

118.   Plaintiff FRIAS brings this claim individually and seeks survival and wrongful death damages under this claim. Plaintiffs also seek attorneys' fees under this claim.

## EIGHTH CLAIM FOR RELIEF

### Supervisory Liability (42 U.S.C. § 1983)

(By Plaintiffs FRIAS and L.D. against Defendants LOPEZ, HEARD, LEE, and HURST)

119.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 118 of this Complaint with the same force and effect as if fully set forth herein.

120.   The individual defendants, including ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, LOPEZ, HEARD, LEE, and HURST acted under color of law in connection with the incident involving DECEDENT, including the use of deadly and non-deadly force against DECEDENT, the wrongful detention and arrest of DECEDENT, and the denial of medical care to DECEDENT.

121.   Defendants LOPEZ, HEARD, LEE, and HURST directed the actions giving rise to the wrongful detention and arrest of DECEDENT, the use of excessive force against DECEDENT, and the denial of medical care to DECEDENT. This includes but is not limited to:

    a) Authorizing and/or directing the CNT negotiator to cease efforts to peaceably negotiate with DECEDENT;

    b) Directing Defendant ADAM to deploy gas into the DECEDENT's bedroom;

c) Directing the individual officer defendants to use force against DECEDENT, including deadly and non-deadly force;

d) Directing the individual officer defendants to remove DECEDENT from his bedroom and formulating a plan for doing so;

e) Incorrectly determining that DECEDENT posed an immediate threat of death or serious bodily injury to any person;

f) Providing inadequate training and direction regarding the use of deadly and non-deadly force;

g) Inadequately supervising, training, controlling, assigning, and disciplining CITY officers and other personnel, including Defendants ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, and MCCARTHY, whom Defendants LOPEZ, HEARD, LEE, and HURST knew or in the exercise of reasonable care should have known had the propensity to use excessive force;

h) Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which police officers do not report other officers' errors, misconduct, or crimes.

122. By reason of the aforementioned acts and omissions, Plaintiffs FRIAS and L.D. have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

123. Defendants LOPEZ, HEARD, LEE, and HURST had either actual or constructive knowledge of the individual officer defendants' use of excessive deadly and non-deadly force against DECEDENT and other constitutional violations, and/or consented, agreed, or acquiesced to the constitutional violations, including

the wrongful detention and arrest, the use of excessive force, and the denial of medical care. LOPEZ, HEARD, LEE, and HURST acted with deliberate indifference to the foreseeable effects and consequences of these actions of their subordinates with respect to the constitutional rights of DECEDENT, Plaintiffs, and other individuals similarly situated.

124.   Defendants LOPEZ, HEARD, LEE, and HURST were directly involved in the foregoing constitutional violations and in the inadequate supervision, and were directly involved in the establishment or maintenance of a plan of action, organized tactic, policy, practice or custom which was a substantial factor in causing the violations of the DECEDENT's constitutional rights.

125.   Accordingly, Defendants LOPEZ, HEARD, LEE, and HURST each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

126.   Plaintiff L.D. brings this claim individually and as a successor-in-interest to DECEDENT, and seeks both survival and wrongful death damages under this claim.  Plaintiff L.D. also seeks punitive damages, costs, and attorneys' fees under this claim.

127.   Plaintiff FRIAS brings this claim individually and seeks survival and wrongful death damages under this claim. Plaintiffs also seek attorneys' fees under this claim.

### NINTH CLAIM FOR RELIEF

**False Arrest/False Imprisonment**

(By Plaintiff L.D. against All Defendants)

128.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 127 of this Complaint with the same force and effect as if fully set forth herein.

129.   Defendants ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, LOPEZ, LEE,

HEARD and HURST (hereinafter "the officer defendants") while working as officers for the LAPD and/or SWAT and acting within the course and scope of their duties, intentionally deprived DECEDENT of his freedom of movement by use of force, threats of force, menace, fraud, deceit, and unreasonable duress.  The officer defendants detained DECEDENT without reasonable suspicion and arrested him without probable cause.

130.   DECEDENT did not knowingly or voluntarily consent.

131.   The officer defendants detained DECEDENT for an appreciable amount of time.

132.   The conduct of the officer defendants was a substantial factor in causing the harm to DECEDENT.

133.   Defendant CITY is vicariously liable for the wrongful acts of the officer defendants pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

134.   Defendants DOES 6-10, as well as LOPEZ, LEE, HEARD, and HURST, are vicariously liable under California law and the doctrine of *respondeat superior*.

135.   The conduct of the officer defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of DECEDENT, entitling Plaintiff to an award of exemplary and punitive damages.

136.   As a result of their misconduct, the officer defendants are liable for DECEDENT's injuries, either because they were integral participants in the wrongful detention and arrest, or because they failed to intervene to prevent these violations.

137.   Plaintiff L.D. brings this claim as a successor-in-interest to DECEDENT, and seeks both survival and wrongful death damages under this claim.

Plaintiff L.D. also seeks punitive damages, costs, and attorneys' fees under this claim.

## TENTH CLAIM FOR RELIEF

### Battery

(Wrongful Death)

(By Plaintiff L.D. against All Defendants)

138.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 137 of this Complaint with the same force and effect as if fully set forth herein.

139.   The officer defendants (ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, LOPEZ, LEE, HEARD and HURST), while working as officers for the LAPD, and acting within the course and scope of their duties, intentionally shot DECEDENT multiple times with both lethal and less than lethal weapons, used a TASER against him multiple times, deployed concentrated gas at DECEDENT, kicked and restrained DECEDENT, and otherwise used unreasonable and excessive force against him.  As a result of the actions of the officer defendants, DECEDENT suffered severe pain and suffering and ultimately died from his injuries.  The officer defendants had no legal justification for using force against DECEDENT, and their use of force while carrying out their duties as police officers, crisis negotiations officers, and/or LAPD Special Weapons and Tactics team officers was an unreasonable and non-privileged use of force.

140.   As a direct and proximate result of the conduct of the officer defendants as alleged above, DECEDENT sustained injuries and died from his injuries and also lost his earning capacity.  As a direct and proximate result of the conduct of the officer defendants as alleged above, DECEDENT suffered survival damages pursuant to Code of Civil Procedure Section 377.34.

141.   CITY is vicariously liable for the wrongful acts of the officer defendants pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

142.   Defendants DOES 6-10, as well as LOPEZ, LEE, HEARD, and HURST, are vicariously liable under California law and the doctrine of *respondeat superior*.

143.   The conduct of the officer defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiff and DECEDENT, entitling Plaintiff L.D., individually and as successor-in-interest to DECEDENT, to an award of exemplary and punitive damages as to the officer defendants.

144.   Plaintiff L.D. brings this claim as a successor-in-interest to DECEDENT, and seeks both survival and wrongful death damages under this claim. Plaintiff also seeks punitive damages, costs, and attorneys' fees under this claim.

## ELEVENTH CLAIM FOR RELIEF

### Negligence

(Wrongful Death)

(By Plaintiff L.D. against all Defendants)

145.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 144 of this Complaint with the same force and effect as if fully set forth herein.

146.   Police officers, including Defendants, have a duty to use reasonable care to prevent harm or injury to others.  This duty includes using appropriate tactics, giving appropriate commands, giving warnings, and not using any force

1  unless necessary, using less than lethal options, and only using deadly force as a last

2  resort.

3      147.    The officer defendants (ANZALDO, MAYA, GARCIA, MARTINEZ,

4  ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, LOPEZ,

5  LEE, HEARD, and HURST) breached this duty of care.  Upon information and

6  belief, the actions and inactions of the officer defendants were negligent and

7  reckless, including but not limited to:

8          (a)    the failure to properly and adequately assess the need to detain,

9                arrest, and use force or deadly force against DECEDENT;

10         (b)    the negligent tactics and handling of the situation with

11                DECEDENT, including pre-shooting and pre-Tasing negligence

12                and improper handling of a situation involving a mentally ill

13                individual;

14         (c)    the negligent detention, arrest, and use of force, including deadly

15                force, against DECEDENT;

16         (d)    the failure to provide prompt medical care to DECEDENT;

17         (e)    the failure to properly train and supervise employees, both

18                professional and non-professional, including the officer

19                defendants;

20         (f)    the failure to ensure that adequate numbers of employees with

21                appropriate education and training were available to meet the

22                needs of and protect the rights of DECEDENT;

23         (g)    the negligent handling of evidence and witnesses;

24         (h)    the negligent communication of information during the incident;

25         (i)    the failure to properly train the officer defendants with regard to

26                handling situations involving mentally ill individuals.

27      148.    As a direct and proximate result of Defendants' conduct as alleged

28  above, and other undiscovered negligent conduct, DECEDENT was caused to suffer

severe pain and suffering and ultimately died.  Also as a direct and proximate result of Defendants' conduct as alleged above, Plaintiff L.D. suffered emotional distress and mental anguish.  Plaintiff L.D. also has been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, her father, and will continue to be so deprived for the remainder of her natural life.

149.   CITY is vicariously liable for the wrongful acts of the officer defendants pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

150.   Defendants DOES 6-10, as well as LOPEZ, LEE, HEARD, and HURST, are vicariously liable under California law and the doctrine of *respondeat superior*.

151.   Plaintiff L.D. brings this claim as a successor-in-interest to DECEDENT, and seeks survival and wrongful death damages under this claim. Plaintiff L.D. also seeks attorneys' fees and costs under this claim.

## **TWELFTH CLAIM FOR RELIEF**

### **(Violation of Cal. Civil Code § 52.1)**

(By Plaintiff L.D. against all Defendants)

152.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 151 of this Complaint with the same force and effect as if fully set forth herein.

153.   California Civil Code, Section 52.1 (the Bane Act), prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights.

154.   On information and belief, the officer defendants (ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART,

GOOSBY, MCCARTHY, LOPEZ, LEE, HEARD, and HURST), while working for the CITY and acting within the course and scope of their duties, intentionally committed and attempted to commit acts of violence against DECEDENT, including by shooting him and Tasing him without justification or excuse, by integrally participating and failing to intervene in the above violence, and by denying him necessary medical care.

155.   When Defendant ANZALDO shot DECEDENT, and when the officer defendants (ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, LOPEZ, LEE, HEARD and HURST) unreasonably detained DECEDENT and used excessive non-deadly force against him, including tear gas, Tasers, 40MM sponge rounds, and beanbag shotguns, or directed other officers on scene to do so, they interfered with his civil rights to be free from unreasonable searches and seizures, to due process, to equal protection of the laws, to medical care, to be free from state actions that shock the conscience, and to life, liberty, and property.

156.   On information and belief, Defendants intentionally and spitefully committed the above acts of violence and threats to discourage DECEDENT from exercising his civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights, which he was fully entitled to enjoy.

157.   On information and belief, DECEDENT reasonably believed and understood that the violent and threatening acts committed by the officer defendants were intended to discourage him from exercising the above civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights.

158.   Defendants successfully interfered with the above civil rights of DECEDENT and Plaintiff.

159.   The conduct of Defendants was a substantial factor in causing Plaintiff's harms, losses, injuries, and damages.

1    160.   CITY is vicariously liable for the wrongful acts of the officer

2    defendants pursuant to section 815.2(a) of the California Government Code, which

3    provides that a public entity is liable for the injuries caused by its employees within

4    the scope of the employment if the employee's act would subject him or her to

5    liability.

6    161.   Defendants DOES 6-10, as well as LOPEZ, LEE, HEARD, and

7    HURST, are vicariously liable under California law and the doctrine of *respondeat*

8    *superior*.

9    162.   The conduct of Defendants was malicious, wanton, oppressive, and

10   accomplished with a conscious disregard for DECEDENT's and Plaintiff's rights,

11   justifying an award of exemplary and punitive damages as to the officer defendants.

12   163.   Plaintiff L.D. brings this claim as a successor-in-interest to

13   DECEDENT, and seeks survival and wrongful death damages under this claim.

14   Plaintiff also seeks punitive damages, costs, and attorneys' fees under this claim.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSOLIDATED COMPLAINT FOR DAMAGES

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff L.D., by and through her guardian *ad litem* Desiree DeLeon, and Plaintiff Juan Frias, request entry of judgment in their favor and against Defendants City of Los Angeles, Enrique Anzaldo, Leon Maya; William Heard; Ruben Lopez; Juan Garcia; Valentin Martinez; Synthia Lee; Bruce Adam; Guy Dobine; Joe Dominguez; James Hart; Joseph Goosby; Tim McCarthy; Dain Hurst, and Does 1-10, inclusive, as follows: (1) For compensatory damages in whatever other amount may be proven at trial, including both survival damages and wrongful death damages under federal and state law; (2) For funeral and burial expenses, and loss of financial support; (3) For punitive damages against the individual defendants in an amount to be proven at trial; (4) For statutory damages; (5) For interest; (6) For reasonable attorneys' fees, including litigation expenses; (7) For costs of suit; and (8) For such further other relief as the Court may deem just, proper, and appropriate.

DATED:  September 27, 2018         LAW OFFICES OF DALE K. GALIPO
                                   LAW OFFICES OF TODD D. THIBODO


                                   By_____/s/ Dale K. Galipo_____
                                      Dale K. Galipo
                                      Todd D. Thibodo
                                      Attorneys for Plaintiff L.D.


DATED:  September 27, 2018         SEHAT LAW FIRM, PLC


                                   By_____/s/ Cameron Sehat_____
                                      Cameron Sehat
                                      Attorneys for Plaintiff Juan Frias

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury.

DATED:  September 27, 2018    LAW OFFICES OF DALE K. GALIPO
                                               LAW OFFICES OF TODD D. THIBODO


By_____/s/ Dale K. Galipo_____
        Dale K. Galipo
        Todd D. Thibodo
        Attorneys for Plaintiff L.D.


DATED:  September 27, 2018    SEHAT LAW FIRM, PLC


By_____/s/ Cameron Sehat_____
        Cameron Sehat
        Attorneys for Plaintiff Juan Frias

CONSOLIDATED COMPLAINT FOR DAMAGES