**MICHAEL N. FEUER**, City Attorney
**KATHLEEN A. KENEALY,** Chief Assistant City Attorney – SBN 212289
**SCOTT MARCUS,** Civil Litigation Branch Chief - SBN 184980
**CORY M. BRENTE**, Senior Assistant City Attorney – SBN 115453
**CHRISTIAN R. BOJORQUEZ**, Deputy City Attorney – SBN 192872
200 North Main Street, 6th Floor, City Hall East
Los Angeles, CA 90012
Phone No.: (213) 978-7023
Fax No.: (213) 978-8785
Email: christian.bojorquez@lacity.org
Attorneys for Defendants CITY OF LOS ANGELES, et al.

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN FRIAS, individually and as Successor-of-interest on behalf of the Estate of CESAR FRIAS, Plaintiff, <br><br> vs. <br><br> CITY OF LOS ANGELES; ENRIQUE ANZALDO, and DOES 1 through 10, Defendants. <br><br> *Consolidated with* L.D., a minor, by and through her guardian ad litem Desiree De Leon, individually and as successor-in-interest to Cesar Frias, deceased, Plaintiff, <br><br> vs. <br><br> CITY OF LOS ANGELES; ENRIQUE ANZALDO; and DOES 1-10, inclusive, Defendants. | **CASE NO.: CV16-04626-PSG (SKx)** <br> Consolidated with CV17-00827 <br> *Hon. Philip S. Gutierrez, Ctrm. 6A, 6th Fl., 1st Street* <br> *Mag. Steve Kim, Ctrm. 540, 5th Fl., Roybal* <br><br> **DECLARATION OF GERALD KNAPTON ISO CITY'S OPPOSITION TO PLAINTIFFS MOTION FOR ATTORNEYS' FEES (ECF 156); EXHIBITS 1-4** <br><br> Date: April 27, 2020 <br> Time: 1:30 p.m. <br> Ctrm: 6A |

- 1 -

4847-0096-8375.1

## DECLARATION OF GERALD G. KNAPTON

1. I, Gerald G. Knapton, make this declaration in support of the City's Opposition to Plaintiffs' motion for fees (the "Fee Motion" - ECF 156) in Case No. 2:16-cv-04626-PSG-SK. I am making this Declaration as an expert witness, based on matter (including my specialized knowledge, skill, experience, training and education) perceived by, or personally known to me, or made known to me that is of a type that may reasonably be relied upon by an expert in forming an opinion upon the subject to which my testimony relates.

### I.    SUMMARY OF OPINIONS AND CONCLUSIONS

**Facts:**

2. It is my understanding that this case concerns these events of Tuesday, April 5th, 2016: At 7:00 p.m. a call was made to LAPD Communications by Joel Hernandez, requesting police assistance with his cousin Plaintiff decedent Cesar Frias (aged ~20), who was at the Hernandez family home in Sylmar and "acting strange." Joel Hernandez advised that Cesar had just been released from the hospital, having been diagnosed as suicidal and chemically imbalanced. It was said that Cesar Frias was acting, "weird," walking around not making sense and possibly under the influence. Joel Hernandez asked for assistance to take his cousin, Cesar Frias to the hospital.   After a prolonged standoff, Cesar Frias left the house holding a pair of scissors and advanced towards Officer James Hart while making slashing motions.  Cesar Frias left the house to the rear side where SWAT Officers Anzaldo and Hart were located. Cesar Frias continued to make threatening slashing motions with the scissors, and at about 2:00 a.m. Officer Enrique Anzaldo fired a single shot with an assault rifle to protect Officer Hart. Cesar Frias fell to the ground with a serious injury, but continued to hold onto the scissors and continued to resist being taken into custody for about 3 minutes. As soon as Cesar Frias was restrained, the LAFD paramedics, who were on site and standing by, began treatment and

transported Cesar Frias to the nearest emergency room, where he was pronounced dead.

3.      I am informed that the undisputed medical testimony confirmed that the gunshot wound was the singular cause of death. There was no medical testimony that an alleged delay in medical care in any way changed the outcome of these events or that there was any other contributing cause of death. The undisputed testimony of Defendants' medical expert, Dr. Gary Vilke, confirmed that Cesar Frias was physically able to continuing resisting for a period of time after being shot. L.D., a minor child, was as yet unborn at the time of the shooting. She is about 4 years old now.

4.      The jury returned a mixed verdict, initially finding that about half of the officers involved did not use excessive force for purpose of the § 1983 claim, including a finding the firing the assault rifle was not excessive force. The jury also found that some officers denied Cesar Frias timely medical care, and that this caused "injury, harm, or death" to him. However, the verdict provided no explanation as to what that meant in light of their finding that the undisputed cause of death, the assault rifle, did not constitute unreasonable force. The jury also found that some officers interfered with Plaintiffs' familial relationship with Cesar Frias, including the two officers it found had delayed medical care.

5.      On the state claims, the jury found for Plaintiffs on the Battery and Bane Act claims, and for Defendants on the Negligence and Punitive Damages Claims. The jury then awarded Cesar Frias damages separately for pre-death pain and suffering and for loss of life, and awarded L.D. and Juan Frias damages based on Cesar Frias's death.  The special verdict form dated 1/30/2020 has a section for the Fourth Amendment Excessive Force Claim that concludes that use of the Assault Rifle by Officer Enrique Anzaldo was NOT excessive force. The use of the Pinning Pole (Officer Adam) and Kicks (Officer McCarthy) were also NOT found to be excessive. The claim based on the use of the Beanbag Shotgun, the 40 MM

Sponge Launcher and the Use of Taser were checked as Excessive as to only Officers Dobine, Dominguez, Maya and Gooby. Denial of medical aid was found as to Leon Maya and Joseph Goosby only. The Fourteenth Amendment claim for interference with Plaintiffs' family relationship was found as to Officers Dobine, Dominguez, Maya and Goosby. On the Battery claim the officers were found to have use unreasonable force, causing the death of Cesar Frias. No negligence was found. The Bane Act claim was found. The damages award as to Cesar Frias was for $500,000 for pre-death pain and suffering and $500,000 for loss of life. Layla's [aka L.D.] damages were $500,000 for past loss and $1,500,000 for future loss. Juan Frias damages were $500,000 for past loss and $1,000,000 for future loss. None of the eight officers were found to have acted with malice, oppression, or in reckless disregard of Cesar Frias' rights.

6.    Plaintiffs' counsel asked the jury to award $30,000,000 to $40,000,000. The jury awarded $4,500,000 as confirmed by the Court's docket entry ECF 150 that reads: "JUDGMENT by Judge Philip S. Gutierrez: NOW THEREFORE IT IS ORDERED, ADJUDGED AND DECREED that final judgment in this action be entered as follows: Total judgment in the sum of $4,500,000[1], plus costs pursuant to Federal Rule of Civil Procedure 54(d)(1), interest calculated from the date of the January 30, 2020 Verdict (see Dkt. Nos. 142, 143) at the rate specified by 28 U.S.C. Section 1961, and reasonable attorneys' fees, is entered against Defendants City of Los Angeles, Guy Dobine, Joe Dominguez, Leon Maya, and Joseph Goosby and in favor of Plaintiffs L.D. and Juan Frias. The City of Los Angeles is vicariously liable as to the jury's finding in Plaintiffs' favor on Plaintiffs' battery and Bane Act claims. Plaintiffs L.D. and Juan Frias are the prevailing parties and may apply to the court for an award of costs and reasonable attorneys' fees as permitted by state and federal law. (MD JS-6, Case Terminated). (bm) (Entered: 02/20/2020)"

---

[1] The total in the Verdict is $4,500,000 ($1.0 MM Cesar; $2.0 MM Layla; $1.5 MM Juan).
4847-0096-8375.1

**Fee Motion**:

7.    Plaintiffs have filed their joint fee motion (ECF 156) seeking a lodestar of $1,646,165 in fees for 2,220.4 hours of legal services by five timekeepers for their work up to March 4, 2020, reserving the right to request further fees for work on the post-trial motions.

**Representation of Plaintiffs**:

8.    Plaintiff Juan Frias is shown on the PACER docket as represented by *both* the Dale K. Galipo and the Sehat law firms. Plaintiff L.D., a minor, is shown as represented only by the Galipo Law Firm (plus Todd D. Thibodo, presumably the referring attorney).

**My opinion on Lodestar:**

9.    While I asked for the information and have seen a letter requesting it, Plaintiffs' counsel have not yet explained the financial arrangements among the two firms and also the arrangement with a "referring attorney" (presumably Mr. Thibodo) and with their clients so until they do this no amount of fees should be awarded to them as it cannot be determined if the total fees are "unconscionable."

10.    If the explanation is provided to the satisfaction of this Court, then in order to assist the Court I have identified four billing issues with the request and an issue over hourly rates requested that are higher than I see actually paid for similar legal services. Some of the time requested is not by a professional. Much of the legal work was not prevailing as the claim against Officer Anzaldo failed as the shooting was deemed to be lawful.

11.    After eliminating vague, local travel time, 30 percent of block billed time and deducting the excessively duplicative time and adjusting for time that is not normally compensable and applying the market rates - the balance of time is 1561.8 hours and a lodestar of **$744,877.00.** The time for "non-prevailing" efforts at trial shown by the Trial Testimony breakdown that I have been provided is about

4847-0096-8375.1

50% to 60%. If one adjusts down for the non-prevailing time at trial at about fifty to sixty percent the award would be $636,736.25 (-50%), or $615,108.10 (-60%).

**Our procedure:**

12.     The attached Microsoft® Excel® database (**Exhibit 2**), contains and examines all the time submitted in five declarations but it assembles all this time in chronological order in one spreadsheet, allowing one to see what each person is doing each day relative to the others.

13.     The columns to the right of the "description" column use a single letter to identify those line entries with problems including "V" (Too Vague, "T" (Local Travel, "B" (Block Billed), and "D" (Duplicative).

14.     The spreadsheet also has two sets of fees shown in column "F" and column "H". One fee calculation uses the rates requested and one uses the actual non-contingent hourly rates paid for similar litigation in Los Angeles of $650 for Mr. Galipo, $510 or $355 for Associates. The so-called legal assistant is not a professional and his time is shown at $0.00.

15.     I have used the filtering and calculation abilities of MS Excel to calculate the hours and fees under two rate scenarios so the proposed amounts for adjustments are shown using both rate scenarios.

## II.     BACKGROUND AND QUALIFICATIONS OF EXPERT

16.     My background, qualifications as an expert, and experience is more fully set forth in **Exhibit 1** attached to this Declaration.  I was educated at Brown University, U.C., Berkeley, and the School of Law at U.C.L.A.  I am an attorney at law licensed to practice in the State of California since 1977, and I am admitted to all federal courts within California and the Court of Appeals for the Ninth and Third Circuits.  I am a senior partner/shareholder of the law firm Ropers, Majeski, Kohn & Bentley, which has offices in Los Angeles (where I am based), Costa

Mesa, San Francisco, Walnut Creek, Redwood City, San Jose, Las Vegas, New York City, and Boston. I have been at Ropers Majeski since July 2002, and most of my time is spent as an expert for legal billing and ethical issues.

17.    I reviewed the motion materials, the PACER docket, some of the file's documents and interviewed trial counsel for the City to inform me about the facts of this case. I have personally reviewed far over $4.5 billion dollars in legal fees and work product. I have reviewed hourly legal bills for professional services and supporting work product in many appeals and trials. My law firm has represented cities and counties in police shooting cases for over 40 years. Many of my fee matters have included civil rights claims related to police actions and police employment, FEHA, discrimination, retaliation or other employment-based claims as part of the litigation. When the Rampart Station cases began to mount up I helped the City establish rules for the "conflicts counsel" who represented LAPD officers and then reviewed the bills by those law firms for their legal work.   I have reviewed hourly legal bills and supporting work product in cases involving the Rampart Station CRASH claims, McDonald's "shootout cases," officers Lyga/Gaines matter, Ismael Jimenez, Death Row Records matters, Eulia Love, Rafael Perez, Nino Duren, Christopher Wallace (aka "Notorious B.I.G."), Christopher Dorner and other alleged police or sheriff brutality cases, as well as a vast assortment of other matters such as prisoners' rights cases, assault & battery lawsuits, wrongful death claims, real estate disputes, banking disputes, employment retaliation claims, wage & labor matters, individual & class actions in statutory-interpretation matters, pharmaceutical cases, "Brown Act" compliance matters, notice compliance matters (for "clean water act" and "catalyst" cases), accounting cases, "civil rights" cases, retail credit compliance litigation, truth in lending lawsuits, discrimination lawsuits, and individual actions for a great variety of clients who have questions about the charges.

18.     My past experience as a fee expert includes reviewing the bills and work product for requests for attorney fees in the California Central District.  I have reviewed hundreds of motions to shift fees for cases in both trial and appellate court, and in arbitrations.  Many of these motions were based on "attorney's fee provisions," codes, or statutes such as the "civil rights" statutes or the Tom Bane Act.  I have also reviewed fees to determine the reasonableness of such fees, including for those to be submitted as part of a settlement or as part of a motion to shift fees.  I have reviewed work product and actual legal bills for law firms, corporations, partnerships, insurance companies, cities, counties, the State of California, trustees, and individuals for legal work in trial courts and for appellate work.  My firm submits its legal bills to some clients via Tymetrix360, and I have worked with the Tymetrix staff to understand its methods in a large matter so I am very familiar with that program and the data it assembles.

19.     I have also written and lectured on the issue of reasonableness and allocation of legal fees.  I have been qualified, and testified, as an expert witness in person on attorney fees on approximately 58 occasions—including before both judges and juries in trials and in arbitrations.

## III.   <u>PROCEDURAL BACKGROUND</u>

20.     There were no pre-trial motions of any substance and no hearings. The main tasks were the review of the many percipient and expert reports on the incident, depositions and motions *in limine* and a seven day jury trial. Depositions were taken on these 17 days for these indicated deponents:

| Dates | Deponents |
|---|---|
| 3/21/2018 | Officer Enrique Anzaldo (4 exhibits) 183 pages (34.6 hours - $22,757.50 in fees submitted – see my **Exhibit 4**) |
| 3/23/2018 | Joel Hernandez |
| 3/27/2018 | Alberto Frias; Juan Frias |

| 3/28/2018 | Ed Roca; Jo Dominguez; Jo Goosby |
|---|---|
| 3/29/2018 | Officer McCarthy |
| 4/11/2018 | Officer Maya; Officer Dobine |
| 5/21/2018 | Expert Panchal |
| 1/9/2019 | Expert Dr. James Rosenberg |
| 1/22/2019 | Bruce Adams; Expert Charles Dempsey; Sgt. McDowell |
| 1/23/2019 | Sgt. Jerrold Wert |
| 3/19/2019 | Capt. Lee |
| 4/11/2019 | Lt. Lopez |
| 4/23/2019 | Sgt. Wade (PMK) |
| 5/9/2019 | Officer James Hart - 195 pages (12.5 hours - $15,000 in fees submitted – see my **Exhibit 4**) |
| 8/5/2019 | Experts Ed Flosi and Jennifer Grasso |
| 8/8/2019 | Expert Steve Ijames |
| 8/13/2019 | Expert Roger Clark (for Plaintiffs) |

21.   The PACER docket indicates this series of major events:

| Date | Event/Task |
|---|---|
| 6/24/2016 | Complaint filed |
| 10/13/2016 | Defendant Enrique Anzaldo answers |
| 10/31/2016 and 11/2/2016 | Joint Report Rule 26(f) discovery plan. Trial estimated to be 5-10 days. |
| 5/2 &3/2017 | Court sets dates: "Last Day to Add Parties and Amend Pleadings (Doe defendants are dismissed as of cut-off to add parties): 06/01/17;Discovery Cut-Off: 04/16/18; Last Day to File Motions: 05/23/18; Opening Expert Witness Disclosure [See F.R.Civ.P. 26(a)(2)]: 04/23/18; Rebuttal Expert Witness Disclosure: 05/09/18; Expert Discovery Cut-Off: 06/13/18; Final Pretrial Conference (2:30 p.m.): 07/23/18; Jury Trial (9:00 a.m.): 08/07/18; Estimated Length: 6 Days. (bm)" Final Pretrial Conference set for 7/23/2018 02:30 PM; Jury Trial set for 8/7/2018 09:00 AM. (ab) (Entered: 05/03/2017)" |

| 6/8/2017 | Defendant Anzaldo files motion to dismiss COA #11 (ECF 39) |
| 6/22/2017 | Court denies MTD [no hearing] |
| 4/10/2018 | First Amended Complaint (ECF 51) |
| 4/26/2018 | Answer by Anzaldo and City (ECF 58) |
| 5/22/2018 | Answer by other defendants (ECF68) |
| 9/17/2018 | Stipulation and order to dismiss some defendants, amend complaint and continue trial to September 24, 2019 (ECF 70) |
| 9/27/2018 | Consolidated Complaint (ECF 71) |
| 11/2/2018 | Answer to consolidated complaint (ECF 72) |
| 8/9/2019 | MILs (ECFs 74 to 79) |
| 9/9/2019 | "The Court, having conferred with counsel, allocates 12.5 trial hours per side, and sets a seven day trial estimate." (ECF97) |
| 9/19/2019 | Trial date is vacated (ECF 109) and reset to January 21, 2010 (ECF 112) |

**The trial in 2020**:

22.    Trial to a jury was held on seven days: January 21, 22, 23, 24, 28, 29 and 30th. The verdict was dated January 30, 2020.

**Post-trial Motions:**

23.    Motions for a new trial and for JNOV have been filed and are pending with a hearing set for April 27, 2020.

24.    The fee motion was filed on March 4, 2020 (ECF 156) and is also set for a hearing on April 27, 2020.

**Questions not answered:**

25.    According to the PACER docket Plaintiff L.D. brings this action as "a minor; by and through her guardian *ad litem* Desiree De Leon, individually and successor-in-interest to Cesar Frias, deceased."

26.    L.D. is shown as represented by Dale K. Galipo, Marcel F. Sincich and Renee V. Masongsong of the law offices of Mr. Galipo as well as Todd D. Thibodo of the law offices of Todd D. Thibido. I assumed that Mr. Thibido is the referring

4847-0096-8375.1

- 10 -

attorney mentioned in Ms. Masongsong's June 8, 2016 descriptions of work: "Review and consider case initiating memo (attorney work product) and retainer agreement from referring attorney." "Communication with referring attorney regarding case initiation."

27.     The PACER docket shows Juan Frias "individually and as successor-of-interest on behalf of the estate of Cesar Frias."

28.     Juan Frias (father of Cesar Frias) is shown represented by Cameron Sehat of Sehat Law Firm PLC and also by Marcel Sincich, Renee V. Masongsong and Dale K. Galipo of the Law Offices of Dale Galipo.

29.     Plaintiffs' fee motion caption deviates from this by showing the Law Offices of Dale K. Galipo for only Plaintiff L.D. and The Sehat Law Firm, PLC only for Plaintiff Juan Frias.  He has only three entries for work in 2019. Mr. Sehat submits only 170.2 hours of time (which is 7.7% of the time submitted) and I understand that he did not speak during the jury trial but 112.5 hours of his total time is for work during the trial period.

**Who Gets the Money?**

30.     The lawyers for Plaintiffs do not explain how their contingency fee will be calculated and how much of the proceeds will be for the clients.  Many courts insist on being informed of how the charges will be apportioned and what the reasonable fees are – particularly when a minor child is involved. That is usually done to inform the Court of the total fee in relation to the proceeds to the clients as "A lawyer shall not make an agreement for, charge, or collect an unconscionable or illegal fee." Rule of Professional Conduct Rule 1.5.  Also see, <u>Tarver v. State Bar</u> (1984) 37 Cal.3d 122, 134. Unless this is satisfactorily explained to the Court no fee should be awarded.

4847-0096-8375.1

## IV.    THE FEE-SHIFTING AUTHORITY

31.    The Court found that:

"Plaintiffs L.D. and Juan Frias are the prevailing parties and may apply to the court for an award of costs and reasonable attorneys' fees as permitted by state and federal law." (ECF 150).

32.    I will cite some legal authority guidance on fee-shifting in this section. While I am not acting as advocate in this matter it is usually allowed for me to state what I understand are the rules that I will be following in my expert work. This is a fee shifting claim made under the federal "civil rights" statute and California's Tom Bane Civil Rights Act – each of which reads in relevant part:

A.    Federal:

"In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964, or section 12361 of Title 34, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction."
42 U.S.C.A. § 1988 (West)

B.    State:

"(i) In addition to any damages, injunction, or other equitable relief awarded in an action brought pursuant to subdivision (b), the court may award the petitioner or plaintiff reasonable attorney's fees."
California Civil Code § 52.1 (West)

C.    A local court has provided this helpful summary and overview:

"A plaintiff that prevails in civil rights litigation under federal law (§ 1983) or state law (§ 52.1) may be entitled to an award of attorney's fees. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *see also Chavez v. City of Los Angeles,* 47 Cal.4th 970, 989, 104 Cal.Rptr.3d 710, 224 P.3d 41 (2010). For a plaintiff that prevails on a § 1983 claim, fees may be awarded fees pursuant to 42 U.S.C. § 1988 ("§ 1988"). Once a plaintiff

4847-0096-8375.1

establishes that it is the "prevailing party," a reasonable fee award is typically based upon the lodestar method: "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. Reasonable hours are those hours that "would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful *1017 recovery." *Armstrong v. Davis,* 318 F.3d 965, 971 (9th Cir.2003) (citing *Hasbrouck v. Texaco, Inc.,* 879 F.2d 632, 638 (9th Cir.1989)). A "reasonable rate" may be demonstrated by the moving party submitting "satisfactory evidence in addition to the attorney's own affidavit that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933; *see also Ketchum v. Moses,* 24 Cal.4th 1122, 1132, 104 Cal.Rptr.2d 377, 17 P.3d 735 (2001). Lodestar analysis is generally the same under California law and Federal law."

<u>Rodriguez v. Cty. of Los Angeles</u>, 96 F. Supp. 3d 1012, 1016–17 (C.D. Cal. 2014), <u>aff'd,</u> 891 F.3d 776 (9th Cir. 2018)

33.    California's Appellate and Supreme Courts have established the rules to apply on fees:

"Inflated fee requests constitute a special circumstance. In emphasizing that a trial court retains the discretion to award attorney fees in an amount *1322 that is less than the lodestar amount, the Ketchum court noted, " 'To the extent a trial court is concerned that a particular award is excessive, it has broad discretion to adjust the fee downward or deny an unreasonable fee altogether.' " (Ketchum, supra, 24 Cal.4th at p. 1138, 104 Cal.Rptr.2d 377, 17 P.3d 735.) Specifically, the Ketchum court stated, "A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." (Id. at p. 1137, 104 Cal.Rptr.2d 377, 17 P.3d 735, quoting Serrano IV, supra, 32 Cal.3d at p. 635, 186 Cal. Rptr. 754, 652 P.2d 985.) The Serrano IV court explained, " 'If ... the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place. To discourage such greed, a severer reaction is needful....' (Serrano IV, supra, 32 Cal.3d at p. 635, 186 Cal.Rptr. 754, 652 P.2d 985, quoting Brown v. Stackler (7th Cir.1980) 612 F.2d 1057, 1059.) The Serrano IV court noted in a lengthy citation the numerous ways a

- 13 -

party may employ to inflate a fee request, justifying **872 denial of fees altogether: "See, e.g., ... Lund v. Affleck (1st Cir.1978) 587 F.2d 75, 77 [if initial claim is 'exorbitant' and time unreasonable, court should 'refuse the further compensation']; Farris v. Cox (N.D.Cal.1981) 508 F.Supp. 222, 227 [time on fee petition denied for 'overreaching']; Vocca v. Playboy Hotel of Chicago, Inc. (N.D.Ill.1981) 519 F. Supp. 900, 901–902 [fee denied in entirety on ground of counsel's dilatoriness and hours claimed for clerical work]; Jordan v. United States Dept. of Justice (D.D.C.1981) 89 F.R.D. 537, 540 [revd. (1982) 691 F.2d 514] [fee denied in entirety on ground of unreasonable request and inadequate documentation].)" (Serrano IV, supra, 32 Cal.3d at p. 635, fn. 21, 186 Cal .Rptr. 754, 652 P.2d 985.)

<u>Christian Research Inst. v. Alnor</u>, 165 Cal. App. 4th 1315, 1321–22, 81 Cal. Rptr. 3d 866, 871–72 (2008).

**Hourly Rates:**

34.    The test for deriving hourly rates is also settled:

"We approved the calculation of attorney fees beginning with a lodestar figure based on the reasonable hours spent, multiplied by the hourly prevailing rate for private attorneys in the community conducting *noncontingent litigation* of the same type. (Serrano IV, supra, 32 Cal.3d at p. 625, 186 Cal.Rptr. 754, 652 P.2d 985.) We remarked that the reasonable value of attorney services is variously defined as the "'hourly amount to which attorneys of like skill in the area would typically be entitled.' " (Id. at p. 640, fn. 31, 186 Cal.Rptr. 754, 652 P.2d 985; see also id. at p. 643, 186 Cal.Rptr. 754, 652 P.2d 985 ["Services compensable under [Code of Civil Procedure] section 1021.5 are computed from their reasonable market value"].)"

<u>Ketchum v. Moses</u>, 24 Cal. 4th 1122, 1133, 17 P.3d 735, 742 (2001) (Italics in original).

**The Reason Specificity of Work Provided is required in Fee Motions:**

35.    Since most of the submitted time is for work outside the courtroom the Chief Justice of the United States explained why specificity is required:

"A claim for legal services presented by the prevailing party to the losing party pursuant to § 1988 presents quite a different situation from a bill that a lawyer presents to his own client. In the latter case, the attorney and client have presumably built up a relationship of mutual trust and respect; the client has confidence that his lawyer has exercised the appropriate "billing judgment," *ante*, at 1940, and unless challenged by the client, the billing does

- 14 -

not need the kind of extensive documentation necessary for a payment under § 1988. That statute requires the losing party in a civil rights action to bear the cost of his adversary's attorney and there is, of course, no relationship of trust and confidence between the adverse parties. **As a result, the party who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed.**"
<u>Hensley v. Eckerhart</u>, 461 U.S. 424, 441, 103 S. Ct. 1933, 1943, 76 L. Ed. 2d 40 (1983) (Emphasis supplied).

## V.    HOURS AND FEES FOR WORK ON WHICH PLAINTIFFS PREVAILED

36.    My staff and I have prepared a Microsoft® Excel® spreadsheet that is attached as **Exhibit 2** to this declaration that shows all the time in chronological order. It has 1384 lines on 86 pages and includes 2,247[2] hours of time from 6/8/2016 to 3/4/2020. The total fees are $1,659,220.00 if one accepts the proffered rates of Plaintiff's counsel or $1,157,276.50 if one applies non-contingent hourly rates as explained and justified elsewhere in this declaration. These initial totals require some adjustments as explained below.

37.    **Exhibit 2** has two sets of rates and fees for each line entry.  One (in columns E and F) is the hourly rate and resulting fee that is requested and one (in columns G and H) is the non-contingent hourly rate and resulting fee for litigation in Los Angeles.

38.    Some lines have descriptions that do not meet the normal requirements for a fee-shifting motion.  Those are identified by a letter in one of the columns to the right of the Description. There are four kinds of issues identified:

1.    Too Vague description such as "Research" "Legal Research" "Trial Preparation" or "Review Case Files" is marked with a "V" in column A.

---

[2] This is 26.6 more hours than listed in Plaintiffs' chart on page 22 of the fee motion. 16.1 more hours for Ms. Masongsong and 10.5 more hours for Mr. Sincich.

4847-0096-8375.1

2.    Travel time[3] from/to the office is marked with a "T" in column B.

3.    Entries that have lumped or block billed hours for large blocks of time for more than one task are marked with a "B" in column C.

4.    Entries that are duplicative of others or unnecessary are marked with a "D" in column D.

39.    The indicated time and fees (using the two rate scenarios) is this:

| Categories | All Hours | Fees at Requested Rates | Fees at Non-Contingent Rates |
|---|---|---|---|
| All hours | 2247 hrs. | $1,659,220.00 | $1,157,276.50 |
| Too Vague Descriptions | -456.6 hrs. | -$531,825.00 | -$291,483.00 |
| Travel to from office | -38.3 hrs. | -$18,755.00 | -$17,146.00 |
| Block Billed [Totals] | [135 hrs.] | [$150,800.00] | [$83,620.00] |
| 30% of total time and fees | -40.5 hrs. | -$45,240.00 | -$25,086.00 |
| Duplicative or unnecessary | -149.8 hrs. | -$93,082.50 | $78,684.50 |
| Balances | 1561.8 hrs. | $970,317.50 | $744,877.00 |

40.    This amount may be adjusted up or down as the Court deems appropriate based on the results. I understand that much of the trial was a claim for a wrongful shooting against Officer Anzaldo and Officer Hart[4] and that claim was lost. I am informed that that claim including the "scissors" as a weapon issue occupied about fifty to sixty percent of the time at trial as quantified by the Trial Testimony Breakdown. The total hours and fees for only the trial is this:

---

[3] It is not the practice to bill for local travel as that is an overhead item.
[4] These SWAT officers were at the rear of the residence when the attack and shooting occurred.

4847-0096-8375.1                                                        16

| Dates / Spreadsheet Lines | Hours | Fees at requested rates | Fees at non-contingent rates |
|---|---|---|---|
| 1/21/2020 to 1/30/2020 Lines 1181 to 1328 | 418.0 | $307,792.50 | $216,281.50 |

| Trial Days Fees | 50 percent adjustment | 60 percent adjustment |
|---|---|---|
| $307,792.50 at requested rates | -$153,896.25 | -$184,675.50 |
| $216,281.50 at non-contingent rates | -$108,140.75 | -$129,768.90 |

41.    If the lodestar shown above in paragraph 39 is adjusted downwards by those amounts the adjusted lodestars would be this range:

| Balance at requested rates | Balance at non-contingent rates |
|---|---|
| $970,317.50 | $744,877.00 |
| -$153,896.25 (50% - Trial) | -$108,140.75 (50% - Trial) |
| $816,421.25 | $636,736.25 |
| -$184,675.50 (60% - Trial) | -$129,768.90 (60% - Trial) |
| $785,642.00 | $615,108.10 |

4847-0096-8375.1

Declaration of Gerald Knapton ISO City's Opposition to Motion for Fees

# VII.    HOURLY RATE ANALYSIS

42.    Counsel for Plaintiffs seek rates of up to $1,200 per hour but they do not submit any objective evidence to support this claim. Here is a chart showing **all time** and the rates requested and the non-contingent rates and fees for each timekeeper – presented in order of time submitted:

| Timekeeper | Bar year | Hours | Rate requested | Fee at requested rate | Non-contingent rate | Fee at non-contingent rate |
|---|---|---|---|---|---|---|
| Dale Galipo | 1984 | 803.0 | $1,200 | $963,600 | $650 | $ 521,950.00 |
| Renee Masongsong | 2011 | 691.7 707.8* | $550 | $380,435 | $510 | $360,978.00 |
| Marcel F. Sincich | 2017 | 517.8 528.3* | $400 | $207,120 | $355 | $187,546.50 |
| Cameron Sehat | 2012 | 170.2 | $525 | $89,355 | $510 | $86,802.00 |
| Alejandro Monguia | none | 37.7 | $150 | $5,655 | $00.00 | $00.00 |
| Totals | | 2220.4 2247.0* | | $1,646,165 | | $ 1,157,276.50 |

*Indicates higher hours in spreadsheet; used for fees at adjusted rates.

## 2018 Real Rate Report

43.    In years past it was often difficult to determine what non-contingent hourly rates were paid in many cities for litigation. But starting in 2010 the

4847-0096-8375.1

- 18 -

TyMetrix/LegalVIEW actual "anonymized" billing data has been assembled and published each year by the Wolters Kluwer ELM Solutions Company. The data is gathered for the most part from the TyMetrix360° electronic invoicing system.

44.     My firm and I have used the TyMetrix system for our own invoicing, and I also worked directly with the TyMetrix program managers and engineers on a very large project several years ago. During that project I came to understand exactly how the program worked and the steps that they took to verify the accuracy of their data. I am now very familiar with the way the TyMetrix electronic billing system works, based on a set of its rules that must be followed. The program requires that a set of rules with budgets, staffing and rates be agreed to by the law firm before the system will allow an invoice to be processed. If there are discounts (which is quite common) those discounts are factored into the budget and rate data shown. Once the invoices are submitted the program processes the invoice for compliance with the agreed-upon rules and recommends a payment to be made by the client. The payment data on hourly rates is what is captured by the Real Rate Report.

45.     The most recent iteration is the "2018 Real Rate Report" that became available on March 6, 2019. A true and correct copy of the entire 2018 Report of 171 pages is attached as **Exhibit 3**. It is said to be a $128 billion-dollar database. The data in the 2018 Report is taken from invoices for legal work from October 1, 2015 through September 30, 2018 (see **Exhibit 3** at 166). The rates that it displays are confirmed in many instances by what I see paid in invoices that I have reviewed so I am confident that it is a useful guide for data on actual rates.

### **Many Federal District Courts Accept the Real Rate Report:**

46.     Many Los Angeles courts have agreed with me that this Report is a useful tool: "The Court also turns to the 2016 Real Rate Report: Lawyer Rates, Trends, and Analysis ("the Real Rate Report") as a useful guidepost to assess the

reasonableness of these hourly rates in the Central District.  See Eksouzian v. Albanese, No. CV 13-728 PSG (AJWx), 2015 WL 12765585, at *4-5 (C.D. Cal. Oct. 23, 2015).  The Real Rate Report identifies attorney rates by location, experience, firm size, areas of expertise, and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices from more than 80 companies.  See Hicks v. Toys 'R' Us-Del., Inc., No. CV 13-1302 DSF JCG, 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014).  Courts have found that the Real Rate Report is "a much better reflection of true market rates than self-reported rates in all practice areas."  Id. at *1; see also Tallman v. CPS Sec. (USA), Inc., 23 F. Supp. 3d 1249, 1258 (D. Nev. 2014) (considering the Real Rate Report); G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist., 894 F. Supp. 2d 415, 433 (S.D.N.Y. 2012) (same)."  Grant & Eisenhofer, P.A. v. Brown, No. CV175968PSGAFMX, 2018 WL 4945303, at *2 (C.D. Cal. May 14, 2018).

47.    While not every court has accepted it, many experienced judges in California's federal courts have found the Real Rate Report to be useful.  For example, these Central District judges have found the Real Rate Report useful:

**Hon. Philip S. Gutierrez**: "The Court turns to the 2018 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices ("Real Rate Report") as a useful guidepost to assess the reasonableness of these hourly rates in the Central District. See Eksouzian v. Albanese, No. CV 13-728 PSG (AJWx), 2015 WL 12765585, at *4 5 (C.D. Cal. Oct. 23, 2015). The Real Rate Report identifies attorney rates by location, experience, firm size, areas of expertise and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices from more than eighty companies. See Hicks v. Toys 'R' Us-Del., Inc., No. CV 13-1302 DSF JCG, 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2,

2014). Courts have found that the Real Rate Report is "a much better reflection of true market rates than self-reported rates in all practice areas." Id.; see also Tallman v. CPS Sec. (USA), Inc., 23 F. Supp. 3d 1249, 1258 (D. Nev. 2014) (considering the Real Rate Report); G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist., 894 F. Supp. 2d 415, 433 (S.D.N.Y. 2012) (same)."

Dawson v. Hitco Carbon Composites, Inc., No. CV1607337PSGFFMX, 2019 WL 7842550, at *8 (C.D. Cal. Nov. 25, 2019)

**Hon. Philip S. Gutierrez**:  "The Court turns to the Real Rate Report as a "useful guidepost" in assessing the reasonableness of hourly rates in the Central District.  It is persuasive and a better reflection of true market rates than self-reported rates in all practice areas.  Real Rate Report identifies attorney rates by location, experience, firm size, areas of expertise and industry, as well as specific practice areas.  Zielke v. Rosenstiel, 19-702 PSG (EM), 2019 WL 1718681 at *2 (C.D. Cal. Mar. 25, 2019); Salazar v. Midwest Servicing Group, Inc., 17-0137 PSG (KS), 2018 WL 4802139 at *6–*7 (C.D. Cal. Oct. 2, 2018); Grant & Eisenhofer, P.A. v. Brown, No. 17-5968 PSG (AFM), 2018 WL 4945303 at *2 (C.D. Cal. May 14, 2018); Sang Yong v. Torrance Unified School Dist., 17-5914 PSG (PLA), 2018 WL 6185986 at *7 (C.D. Cal. Feb. 23, 2018); Tom v. Com Dev USA, LLC, 16-1363 PSG (GJS), 2017 WL 10378629 at *7–*8 (C.D. Cal. Dec. 4, 2017); Retta v. Millennium Products, Inc., Nos.15-1801 PSG (AJW), 16-3780 PSG AJW, 2017 WL 5479637 at *12" (C.D. Cal. Aug. 22, 2017).

**Hon Philip S. Gutierrez**: "Courts have found that the Real Rate Report is "a much better reflection of true market rates than self-reported rates in all practice areas." Id. at *1; see also Tallman v. CPS Sec. (USA), Inc., 23 F. Supp. 3d 1249, 1258 (D. Nev. 2014) (considering the Real Rate Report);

4847-0096-8375.1

Declaration of Gerald Knapton ISO City's Opposition to Motion for Fees

G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist., 894 F. Supp. 2d 415, 433 (S.D.N.Y. 2012) (same).”

Holmes v. Harris, No. CV 18-3739 PSG (EX), 2019 WL 6354385, at *2 (C.D. Cal. Oct. 4, 2019)

**Hon Philip S. Gutierrez**: “The Court also looks to the 2016 Real Rate Report: Lawyer Rates, Trends, and Analysis (“Real Rate Report”) as a useful guidepost to assess the reasonableness of hourly rates in the Central District. See Eksouzian v. Albanese, No. CV 13-728 PSG (AJWx), 2015 WL 12765585, at *4–5 (C.D. Cal. Oct. 23, 2015). The Real Rate Report identifies attorney rates by location, experience, firm size, areas of expertise and industry, as well as specific practice areas and is based on actual legal billing, matter information, and paid and processed invoices from more than 80 companies. See Hicks v. Toys ‘R’ Us-Del., Inc., No. CV 13-1302 DSF JCG, 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014). Courts have found that the Real Rate Report is “a much better reflection of true market rates than self-reported rates in all practice areas.” Id.; see also Tallman v. CPS Sec. (USA), Inc., 23 F. Supp. 3d 1249, 1258 (D. Nev. 2014) (considering the Real Rate Report); G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist., 894 F. Supp. 2d 415, 433 (S.D.N.Y. 2012) (same). The 2016 Real Rate Report offers a number of relevant data points for fees in the Central District. In Los Angeles, partners have an hourly rate ranging from $400 to $847. See Real Rate Report at 54. Plaintiffs' counsel's rates are therefore within the acceptable range set out by the Real Rate Report.”

Sang Yong v. Torrance Unified Sch. Dist., No. CV175914PSGPLAX, 2018 WL 6185986, at *7 (C.D. Cal. Feb. 23, 2018)

**Hon. George H. Wu** has accepted the Real Rate Report in at least 3 matters: Nisbet v. Am. Nat'l Red Cross, #2-16-cv-7342-GW (ASx) Docket 136 at 14,

n.12 (June 7, 2018)).  Harrison v. Archdiocese of Los Angeles 2:13-cv-8257 GW (SSx), Docket #115 at 9-10 (May 7, 2015).  In Housing Works v County of Los Angeles, 2:15-cv-08982 GW-RAO, Judge Wu made these comments on July 12, 2018 in his written tentative that became final:

"The Court finds that the Real Rate Report provides objective empirical data that serves as a better benchmark of reasonableness than scouring a litany of cases from within and outside the judicial district."  [Also citing the Downey Surgical Clinic matter Downey Surgical Clinic, Inc. v. Optuminsight, Inc., 2016 WL 5938722, at *11 (C.D. Cal. May 16, 2016) ("Courts have found that the Real Rate Report is a much better reflection of true market rates than self-reported rates in all practice areas.")"  Alexa CURTIN, Plaintiff, v. COUNTY OF ORANGE; Nicholas Lee Caropino, individually and as Deputy Sheriff for the County of Orange; and Does 1 through 50, Defendants, 2017 WL 3834631 (C.D. Cal.) No. 8-cv-00591-SVW-PLA (filed 8/27/2017)."].

**Hon. Dale S. Fisher**: "The Real Rate Report is more persuasive and gives a better reflection of true market rates than the National Law Journal survey because the National Law Journal Survey only lists the rates charged by the 350 largest national law firms according to the firm's advertised rates.  The Real Rate Report, however, is based on actual legal billing, matter information, and paid and processed invoices.  Don v. Unum Group, 13-4502 DSF (VBK), 2016 WL 6804920 at *7-*8 (C.D. Cal. July 5, 2016); Rivas v. ESA Mgmt. LLC, No. 14-5767 DSF (AS), 2016 WL 7647670 at *2 (C.D. Cal. Apr. 28, 2016); Cappuccio v. Pepperdine Univ., No. 13-3125 DSF (AJW), 2014 WL 12573366 at *3–*4 (C.D. Cal. Sept. 17, 2014); Hicks v. Toys 'R' Us-Delaware, Inc., Nos. 13-1302-DSF (JCG), 13-01159 DSF (JCG), 2014 WL 4670896 at *1" (C.D. Cal. Sept. 2, 2014).

4847-0096-8375.1

**Hon. S. James Otero**: The Court found the requested rates were reasonable using the Real Rate Report, declarations from counsel, and the Court's own knowledge of reasonable rates in the district.  Mkay Inc. v. City of Huntington Park, 17-01467 SJO (AFM), 2019 WL 1751823 at *3 (C.D. Cal. Mar. 7, 2019)

48.    The Ninth Circuit approved the use of the Real Rate Report: "The court reasonably considered the 2015 Real Rate Report (RRR), a national publication that provides statistical data on attorneys' fees by location and practice areas. Other district courts in the Central District have also relied on the RRR. See, e.g., Abrego v. City of Los Angeles, No. CV 15-00039-BRO (JEMx), 2017 WL 3453293, at *6 (C.D. Cal. June 16, 2017); Rivas v. ESA Mgmt. LLC, No. 14-CV-5767 DSF, 2016 WL 7647670, at *2 (C.D. Cal. Apr. 28, 2016)."

Kohler v. Eddie Bauer LLC, 792 F. App'x 446, 448 (9th Cir. 2019),  and also:

"Furthermore, the district court based its assessment of the hourly rates on counsel's 2013 rates and the 2015 Real Rate Report, a publication that is not in the record.  The district court's decision reveals nothing of the report's methodology. Use of the Real Rate Report may, however, be appropriate if supported by findings that the report reflects contemporaneous rates."

Stetson v. W. Publ'g Corp., 714 F. App'x 681, 683 (9th Cir. 2017).

49.    Here, a true and correct copy of the entire 171 pages of the 2018 Real Rate Report is attached as **Exhibit 3**, and it is my opinion that the rates shown are accurately reflective of contemporaneous rates for similar litigation in Los Angeles. This is much better source for data on hourly rates than self-reported claims or very broad surveys of rates.

50.   The explanation of how the data is derived is contained in pages 4 to 5, and at pages 162 to 171 of **Exhibit 3**.

**The Report Provides Rates for Various Types of Legal Work in Los Angeles**

51.   The Real Rate Report data on rates is assembled by type of legal work and for major venues as well.

52.   Rates for all Los Angeles transactional and litigation work is collected and shown at pages 21, 27, 33, and 37 of **Exhibit 3**. A snip from the relevant parts of those pages is shown below:

## Section I: High-Level Data Cuts

### Cities

Q3 2018 — Real Rates for Partners and Associates | Trend Analysis (Mean)

| City | Role | | n | First Quartile | Median | Third Quartile | Q3 2018 | Q3 2017 | Q3 2016 |
|------|------|---|---|----------------|--------|----------------|---------|---------|---------|
| Los Angeles CA | Partner | | 999 | $450 | $695 | $955 | $718 | $691 | $656 |
| | Associate | | 1361 | $382 | $550 | $721 | $559 | $529 | $494 |
| Los Angeles CA | Litigation | Partner | 518 | $395 | $650 | $908 | $659 | $622 | $574 |
| | | Associate | 642 | $355 | $510 | $670 | $515 | $463 | $422 |
| | Non-Litigation | Partner | 641 | $501 | $729 | $995 | $772 | $751 | $724 |
| | | Associate | 901 | $410 | $581 | $775 | $595 | $580 | $546 |
| Los Angeles CA | Fewer Then 21 Years | | 232 | $474 | $665 | $920 | $690 | $633 | $593 |
| | 21 or More Years | | 449 | $459 | $688 | $960 | $717 | $694 | $671 |
| Los Angeles CA | Fewer Than 3 Years | | 56 | $357 | $450 | $547 | $447 | $414 | $490 |
| | 3 to Fewer Than 7 Years | | 137 | $395 | $573 | $695 | $561 | $514 | $446 |
| | 7 or More Years | | 239 | $350 | $524 | $751 | $550 | $536 | $510 |

53.   The second of these snips has rates broken down by litigation and non-litigation and since it is the more granular it is the better choice for rates for this matter.  The partner ($650) and associate ($510 or $355) hourly rates for litigation

in Los Angeles are **based on 1160 examples** (the "n" numbers) are displayed on page 27.

54.    At page 115 of **Exhibit 3** There is an even more granular breakdown for commercial litigation using 224 examples for Los Angles from various sized law firms:

## Section IV: In-Depth Analysis for Select US Cities

### Los Angeles CA
By Practice Area and Firm Size

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | Q3 2018 | Q3 2017 | Q3 2016 |
|---|---|---|---|---|---|---|---|---|---|
| Commercial | 50 Lawyers or Fewer | Partner | 23 | $260 | $466 | $574 | $452 | $450 | $423 |
| | | Associate | 20 | $230 | $300 | $395 | $332 | $311 | $337 |
| | 51-200 Lawyers | Partner | 11 | $544 | $680 | $698 | $612 | $686 | $630 |
| | 201-500 Lawyers | Partner | 12 | $421 | $560 | $636 | $541 | $533 | $588 |
| | 501-1,000 Lawyers | Partner | 25 | $650 | $755 | $900 | $759 | $719 | $662 |
| | | Associate | 23 | $395 | $493 | $630 | $523 | $479 | $447 |
| | More Than 1,000 Lawyers | Partner | 35 | $794 | $995 | $1,068 | $918 | $948 | $945 |
| | | Associate | 75 | $522 | $646 | $788 | $651 | $609 | $567 |

Q3 2018 -- Real Rates for Partners and Associates — Trend Analysis (Mean)

55.    The Median number is the mid-point of the data. The First Quartile is another mid-point between the overall Median and the lowest number in the dataset. The rates for Los Angeles shown on page 27 of **Exhibit 3** are the most useful for this matter in my opinion, as they are the most numerous (1160 examples) and they apply to litigation in Los Angeles - the very thing at issue here. The Median rates should be used for the time by Mr. Galipo the most experienced partner on the matter.

4847-0096-8375.1

Declaration of Gerald Knapton ISO City's Opposition to Motion for Fees

56.    The median rates for experienced associates of $510 and First Quartile rate of $355 for new associates should be used for others. The "legal assistant" declares that he is considering applying to law school but that does not qualify him to bill at professional rates.  Most of his time is for very clerical activities and even if he was a qualified paralegal his time would not be appropriate in a fee-shifting motion.

57.    The effect of applying those rates to all time is shown in the attached **Exhibit 2**.

A.    **Summary of Analysis of Time Billing Entries**

58.    I summarize the analysis above as follows:

**From Motion and Exhibit 2:**

Total Amount sought:        $1,646,165.00        2220.4 hours

Total in **Exhibit 2**        $1,659,220.00        2247.0 hours

Adjustment to non-contingent rates:        -$501,943.50

Subtotal        $1,157,276.50

**Category Adjustments**:

| Issue | Hours | At Requested Rates[5] | At non-contingent rates |
|-------|-------|-----------------------|-------------------------|
| Vague | 456.6 | -$531,825.00 | -$291,483.00 |
| Travel | 38.3 | -$18,755.00 | -$17.146.00 |
| Lumped | 40.5 | -$45,240.00 | -$25,086.00 |
| Duplicative | 149.8 | -$93,082.50 | -$78,684.50 |

---

[5] Starting with the Exhibit 2 total that is $13,055 higher in fees and with 26.6 more hours than claimed in the table at page 22 of the motion.

4847-0096-8375.1

- 27 -

| Subtotal | 1561.8 | $970,317.50 | $744,877.00 |
|---|---|---|---|
| Non-Prevailing | | | |
| At-50% | -209.0 | -$153,896.26 | -$108,140.75 |
| Balance | | $816,421.25 | $636,736.25 |
| At -60% | -167.2 | -$184,675.50 | -$129,768.90 |
| Balance | | $785,642.00 | $615,108.10 |

69.    It is therefore my expert opinion based upon my years of experience that, **if** the Court first finds that all the conditions necessary for an award are satisfied, which I do not concede, Plaintiffs' lodestar is **$744,877.00** applying the non-contingent hourly rates to the reasonable time.

**Adjustment for results obtained**:

70.    The time requested for the seven trial days is 418.0 hours and fees of $307,792.50 at requested rates or $216,281.50 at non-contingent hourly rates as shown at lines 1181 to 1328 of **Exhibit 2**.

71.    I understand that Plaintiffs' counsel sought $30 to $40 million dollars from the jury yet received a small fraction of that. I am informed by trial counsel that something in the range of 50% to 60% of the trial testimony was concerned with the shooting claim, a separate claim that Plaintiffs lost.  I was not in the courtroom and understand that this is an issue for counsel to argue and for the Court to decide as it observed the trial.

72.    I have calculated what the numbers for an adjustment of 50% or 60% will be but I do not have an opinion if those adjustment should be applied.

### VIII.    THE TOTAL FEE CANNOT BE UNCONSCIONABLE

73.    Plaintiffs' counsel has not submitted with their Fee Motion any evidence explaining what part of the judgment will go to the three groups of lawyers that appear on the PACER docket and how much will go to the Plaintiffs.

4847-0096-8375.1

- 28 -

74.    If counsel are to receive some amount, say 50% or perhaps even more of the award in addition to any fee award, then that is a factor that the Court and I need to know in order to evaluate the possible "unconscionability" of the total fees they seek. Appellate courts have agreed:

> Petitioner's claimed fee, excluding the amounts paid to Demanes, was almost twice the amount of the actual award of monetary damages to his client.  Moreover, it amounted to $35,000 more than the $20,600 which the district court had seen fit to award as a reasonable fee for services in the action. Petitioner's entitlement to the fee based on future projected earnings of his client also was not supported by any written evidence of a fee agreement. Under the circumstances, we conclude that the fee was indeed "unconscionable."
> (Tarver v. State Bar (1984) 37 Cal.3d 122, 134.)

75.    It is therefore my opinion that Plaintiffs' counsel is not entitled to recover any fees from the City pursuant to the instant Fee Motion because they have failed to provide this Court with any evidence indicating that the total fees they seek to have awarded would not be "unconscionable" and therefore in violation of the Rules of Professional Conduct, Rule 1.5.[6]

76.    The California Supreme Court has defined an "unconscionable" fee as a fee which is "so exorbitant and wholly disproportionate to the services performed as to shock the conscience." (Tarver v. State Bar, supra, at 134.) The California Supreme Court has also noted that, in most cases, an unconscionable fee involves fraud or overreaching by the attorney. (Bushman v. State Bar of Cal. (1974) 11 Cal.3d 558, 563, citing Herrscher v. State Bar (1935) 4 Cal.2d 399.)

## IX.    CONCLUSION

77    It is my opinion that Plaintiffs' counsel should not be allowed any fee recovery at this stage of the proceedings because they have not explained the circumstances such that that the total fees they seek to have awarded to them would

---

[6] "Rule 1.5 Fees for Legal Services.
(A) A member shall not enter into an agreement for, charge, or collect an illegal or unconscionable fee."

not be "unconscionable" and in violation of the Rules of Professional Conduct, Rule 1.5.

78.    However, *if* the Court finds that the conditions necessary for an award are satisfied, then it is my opinion that reasonable fees are no more than **$744,877.00** before any adjustment for the non-prevailing time and fees.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 3, 2020 at Los Angeles, California.


_____

Gerald G. Knapton